**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | Case no.: |
| ) | |
| PLOTE CONSTRUCTION, INC. and MARKI ALTMAN, ) ) ) | |
| Defendants. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Cincinnati Insurance Company ("Cincinnati"), by and through undersigned counsel, brings this complaint seeking a declaration of the parties' rights and obligations under contracts of insurance and states as follows:

**NATURE OF THE SUIT**

1. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332.

2. An actual and justiciable controversy exists between Cincinnati and Plote Construction, Inc. ("Plote"). This action will resolve a dispute as to whether a policy of insurance issued by Cincinnati Insurance Company to Azteca Power Construction Corporation ("Azteca") obligates Cincinnati to defend or indemnify Plote in connection with an underlying lawsuit captioned *Altman v. McMahon et al.*, Case No. 16-L-5748 pending in the Circuit Court of Cook County ("Underlying Lawsuit").

**JURISDICTION AND THE PARTIES**

3. Cincinnati is a corporation incorporated in Ohio with its principal place of business in Fairfield, Ohio. Cincinnati is a citizen of Ohio.

4. Plote is a corporation incorporated in Illinois with its principal place of business in Hoffman Estates, Illinois. Plote is a citizen of Illinois.

5. Marki Altman ("Altman") is an individual who is a resident and citizen of Illinois. As the plaintiff in the Underlying Lawsuit against William McMahon and Plote, Altman is a necessary party to this declaratory judgment action and has been joined solely to be bound by the judgment rendered in this case. No specific relief is sought against Altman. In the event Altman stipulates and agrees to be bound by the resolution of this case, Cincinnati will seek to voluntarily dismiss her from this action.

6. Azteca Power Construction, Inc. ("Azteca") was a corporation incorporated in Illinois. Illinois Secretary of State records show that Azteca was involuntarily dissolved as a corporate entity on January 10, 2015. Cincinnati seeks no relief from Azteca.

7. Plote sought defense and indemnification from Cincinnati in relation to the Underlying Lawsuit. The alleged liability in the Underlying Lawsuit plus costs of defense in that suit, exceeds $75,000.00. The amount in controversy in this case exceeds $75,000.00.

8. There is complete diversity of the parties and the amount in controversy exceeds $75,000.00. Jurisdiction exists under 28 U.S.C. § 1332.

9. Venue is appropriate in this District. The events giving rise to this insurance coverage dispute took place in this District and the Underlying Lawsuit is

pending in an Illinois Circuit Court within this District. Furthermore, the insurance contract at issue in this action was issued to Azteca in this District.

## UNDERLYING LAWSUIT

10. On June 9, 2016, Altman initiated the Underlying Lawsuit in the Circuit Court of Cook County against McMahon.

11. On November 9, 2016, Altman filed an Amended Complaint adding Plote as a defendant.

12. On March 8, 2017, Altman filed a Second Amended Complaint ("Underlying Complaint") against McMahon and Plote. A copy of the Underlying Complaint is attached hereto as **Exhibit A**.

13. The Underlying Complaint alleges that on September 12, 2009, Altman, a pedestrian, was struck by a vehicle operated by McMahon ("Accident") in an intersection at or near 8100 West Forest Preserve Drive in Chicago, IL ("Accident Site").

14. The Underlying Complaint alleges that McMahon negligently operated his vehicle in violation of the Motor Vehicle Laws of Illinois, which caused Altman to suffer the injuries for which she sued McMahon.

15. The Underlying Complaint alleges that on September 12, 2009, Plote was engaged in a construction project at or near 8100 West Forest Preserve Drive in Chicago, Illinois.

16. The Underlying Complaint alleges that Plote negligently failed to exercise ordinary care and caution for Altman's safety and failed to comply with the Manual on Uniform Traffic Control Devices.

17. The Underlying Complaint alleges that it was Plote's duty to place signage consistent with the Manual on Uniform Traffic Control Devices at or near the Accident Cite.

18. The Underlying Complaint alleges that Plote acted or failed to act by placing signage at the wrong height (too low) and/or placing signage in "an improper area so as to block motorists [sic] view of pedestrians preparing to cross the street."

19. The Underlying Complaint alleges that Plote knew or should have known about the dangers associated with improperly placing a sign at or near the entrance to a playground and across the street from a grade school.

20. The Underlying Complaint alleges that the improperly placed sign obstructed McMahon's view as Altman was preparing to cross Forest Preserve Drive, thereby contributing to the accident.

21. The Underlying Complaint alleges that Plote's negligence caused Altman to suffer the injuries for which she sued Plote.

## THE PROJECT

22. Plote was hired by the Illinois Department of Transportation as the general contractor to perform certain construction work in the vicinity of the Accident Site ("Project").

23. Plote subcontracted with Highway Technologies, Inc. ("Highway Technologies") to perform traffic control and protection on the project, including placing traffic control signage and devices.

24. On information and belief, Highway Technologies placed the sign at issue in the Underlying Lawsuit.

4

25. Plote and Azteca entered into a subcontract dated July 14, 2009 ("Subcontract"). A copy of the Subcontract is attached hereto as **Exhibit B**.

26. Pursuant to the Subcontract, Azteca's work at the Project consisted of asphalt removal and reconstruction as well as curb, driveway, and sidewalk removal and reconstruction.

27. Azteca's work included placement of traffic control equipment, supplying flag people, furnishing and placing any aggregate required by Plote, and performing any backfilling and landscape restoration as required.

28. To the extent that Azteca placed any traffic control equipment at the Project, any such equipment was furnished by Plote.

29. To the extent Azteca placed any traffic control equipment, such traffic control equipment was placed where Plote instructed Azteca to place it.

30. To the extent Azteca placed any traffic control equipment, it was limited to traffic control equipment related to Azteca's work at the Project.

31. The Illinois Department of Transportation approved the placement of all traffic control signage each morning before work began at the Project.

32. Azteca maintained records of when its workers were working at the Project.

33. Azteca's records show that no Azteca worker was at the Project from September 5, 2009 through September 13, 2009. A copy of these records are attached hereto as **Exhibit C**.

34. The Accident occurred on September 12, 2009.

35. At the time of the Accident, no one from Azteca had worked at the Project for seven (7) days.

36. No one from Azteca worked at the Project on the day of the Accident.

37. Azteca placed traffic control equipment only on those days when it was working at the Project and took down any such traffic control equipment at the end of each working day.

## CINCINNATI POLICY AND PLOTE'S CLAIM FOR COVERAGE

38. Cincinnati issued liability insurance policy number CAP 082 22 06 to Azteca Power Construction Corp. with relevant effective dates of May 17, 2009 through May 17, 2010 (the "Policy"). Copies of relevant portions of the Policy are attached hereto as **Exhibit D**.

39. Plote is not named as an insured under the Policy.

40. On January 12, 2017, Plote tendered the defense and indemnity of the Underlying Lawsuit to Cincinnati and Azteca, claiming it was entitled to coverage under the Policy as an additional insured.

41. The Policy contains an endorsement (Form GA 233 IL 02 07) which provides additional insured coverage under certain conditions as follows:

> *(1)* *Any person or organization described in Paragraph **9.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:*
>
> *(a)* *A written contract or agreement; or*
>
> \* \* \*
>
> *is an insured, provided:*
>
> *(a)* *The written or oral contract or agreement is:*

6

    *1)* *Currently in effect or becomes effective during the policy period; and*

    *2)* *Executed prior to an "occurrence" or offense to which this insurance would apply; and*

  *(b)* *They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.*

 *(2)* *Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:*

    \*  \*  \*

 *(f)* *Any person or organization with which you have agreed per Paragraph **9.a.(1)** above to provide insurance, **but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf.***

(Emphasis added).

42. In order for Plote to qualify as an additional insured under the Policy for purposes of the Underlying Lawsuit, Plote's liability to Altman must have arisen out of Azteca's work performed at the Project.

43. Cincinnati agreed to defend Plote under a reservation of rights.

44. Among other reasons, Cincinnati reserved the right to deny coverage and to withdraw from providing a defense to Plote if the Accident did not arise out of Azteca's work for Plote.

## COUNT I – DECLARATORY JUDGMENT
### Plote's Liability Did Not Arise Out Of Azteca's Work

45. Cincinnati repeats and realleges the allegations in Paragraphs 1-44 as if fully set forth herein.

46. Azteca placed Plote's traffic control signs at locations designated by Plote, solely in relation to the work being done on that day by Azteca at the Project.

7

47. The Illinois Department of Transportation approved the placement of traffic control equipment each day before work began.

48. Contemporaneous records show that Azteca performed no work at the Project on the day of the Accident or the preceding seven (7) days.

49. The Underlying Complaint alleges that Plote is liable for the Accident and resulting injuries because of its negligent placement of traffic control signage.

50. At the end of each work day, Azteca took down any traffic control equipment it placed while it was working at the Project.

51. On information and belief, the signage referenced in the Underlying Complaint did not belong to Azteca and had not been placed there by Azteca.

52. On information and belief, Highway Technologies placed the sign at or near the Accident Site as alleged in the Underlying Complaint.

53. As Plote's liability to Plaintiff Altman did not arise out of Azteca's work, Plote does not qualify as an additional insured under the Policy.

54. As Plote is not an insured under the Policy, Cincinnati owes no coverage to Plote in relation to the Underlying Lawsuit.

WHEREFORE, Azteca respectfully requests this Court issue a declaratory judgment that Cincinnati has no duty to defend or indemnify Plote in the Underlying Lawsuit.

CINCINNATI INSURANCE COMPANY

By: /s/ Michael P. Baniak

Hope G. Nightingale (6184864)
Michael P. Baniak (6299036)

                Litchfield Cavo LLP
                303 W. Madison Street, Suite 300
                Chicago, IL  60606
                Phone: 312-781-6614 (Nightingale)
                Phone: 312-781-6596 (Baniak)
                Email: nightingale@litchfieldcavo.com
                Email: baniak@litchfieldcavo.com